[Cite as *State v. Towns*, 2020-Ohio-5120.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio/City of Bryan           Court of Appeals No. WM-19-023

     Appellee                    Trial Court No. CRB1900417A

v.

Steven M. Towns              **DECISION AND JUDGMENT**

     Appellant                Decided: October 30, 2020

* * * * *

Mark R. Weaver and Ryan M. Stubenrauch, Special Prosecutors,
for appellee.

Henry Schaefer, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellant, Bryan Towns, appeals the judgment of the Bryan Municipal Court, sentencing him to 180 days in jail, suspending the entire jail sentence, ordering him to pay a fine and costs, and placing him on community control for a period of three

years after a jury found him guilty of one count of disclosure by a public official.  For the reasons that follow, we find no error in the proceedings below, and we therefore affirm the trial court's judgment.

## A.  Facts and Procedural Background

{¶ 2} This case began upon the state's filing of a complaint in the trial court on June 20, 2019, charging appellant with one count of disclosure by a public official in violation of R.C. 102.03(B), a misdemeanor of the first degree, and two counts of unauthorized dissemination in violation of R.C. 2151.421(I)(2)(a), misdemeanors of the fourth degree.  These charges stemmed from appellant's October 19, 2018 posting of approximately 632 pages of documents related to cases of child abuse and neglect handled by the Williams County Job and Family Services (the "Job and Family Services report"), some of which contained confidential information, to the website of the Williams County Sheriff's Office.  At the time of the posting of the Job and Family Services report, appellant was the sheriff of Williams County.  In that role, appellant had prior dealings with the Williams County Job and Family Services, and was unsatisfied with the way in which the agency was handling reports of child abuse and neglect.

{¶ 3} On July 12, 2019, appellant entered a plea of not guilty to the charges contained in the complaint, and the matter proceeded to pretrial discovery and motion practice.  On September 26, 2019, appellant filed a motion to dismiss the state's complaint.  In his motion, appellant argued that R.C. 102.03(B) and 2151.421(I)(2)(a) are unconstitutional under the constitutions of the United States and the state of Ohio, both

2.

on their face and as applied to appellant, because these statutes infringed upon his freedom of speech and violated his rights to due process by imposing strict liability. Additionally, appellant contended that the Ohio Ethics Commission is the entity empowered to conduct investigations under R.C. 102.03(B) and that the state lacked jurisdiction under the statute absent a referral of the matter from the Ohio Ethics Commission. Appellant went on to note that this was the first time the state charged a defendant with a violation of R.C. 102.03(B) without a referral from the Ohio Ethics Commission, and urged the trial court to dismiss the matter based upon what appellant deemed was selective prosecution on the part of the state. Finally, appellant asserted that the trial court lacked jurisdiction over the two unauthorized dissemination counts because R.C. 2151.23(A)(5) grants the juvenile court exclusive jurisdiction over cases involving R.C. 2151.421(I)(2)(a).

{¶ 4} On October 10, 2019, the state filed a "motion for partial nolle prosequi," seeking leave of court to dismiss the counts of unauthorized dissemination under R.C. 2151.421(I)(2)(a). On that same day, the state filed its memorandum in opposition to appellant's motion to dismiss, in which it argued that neither R.C. 102.03(B) nor 2151.421(I)(2)(a) were unconstitutional. As to appellant's free speech claim, the state asserted that the First Amendment "does not entitle Defendant to release confidential child abuse reports as a form of political speech." The state further maintained that constitutional challenges similar to appellant's had already been rejected in Ohio, citing cases from the Tenth District and the Eighth District in support.

3.

{¶ 5} In addition, the state argued that R.C. 102.03(B) is not a strict liability statute as appellant suggested in his motion to dismiss. Rather, the state maintained that the lack of an express mens rea in the statute results in the application of a default mens rea of recklessness.

{¶ 6} Next, the state insisted that the Ohio Ethics Commission does not hold exclusive authority to prosecute all violations of R.C. 102.03(B). The state noted that a grant of exclusive jurisdiction to the Ohio Ethics Commission is not provided in the statute, and argued that "[i]f the General Assembly had intended to confer exclusive jurisdiction over all prosecutions pursuant to R.C. 102.03, they would have expressly said so." The state went on to argue that "the Ethics Commission does not have any adjudicative authority, it cannot impose fines or other punishment, and its proceedings are not governed by R.C. Chapter 119.

{¶ 7} Finally, the state rejected appellant's accusation of selective prosecution, noting that appellant failed to meet his burden of pointing to others similarly situated who were not prosecuted or demonstrating that the state acted in bad faith in selecting him for prosecution.

{¶ 8} The trial court issued its decision on appellant's motion to dismiss on October 21, 2019. In its decision, the trial court found that it had jurisdiction to proceed with the case, and further concluded that appellant's motion to dismiss did not "state sufficient legal grounds and is found not well taken and denied." In a separate order journalized the same day as its ruling on appellant's motion to dismiss, the trial court

4.

granted the state's motion for partial nolle prosequi, thereby dismissing the charges for unlawful dissemination.

{¶ 9} On October 22, 2019, the state filed a motion in limine, in which it sought to prevent appellant from introducing evidence at trial that it claimed was irrelevant to the proceeding, namely evidence pertaining to the following:

1. Statements and opinions of witnesses, including the Defendant, concerning the performance, faults, perceived faults, failures, or perceived failures of the Williams County Job and Family Services * * *, the Williams County Prosecutor's Office, the Ohio Attorney General's Office, or any other agency regarding their response or handling of complaints or reported crimes that aren't the subject of the above captioned case.

2. Any other evidence or testimony regarding the performance and/or alleged failure to act by Williams County Job and Family Services or any other agency with respect to previous reports or complaints of alleged child abuse and neglect occurring in Williams County, Ohio.

{¶ 10} On October 31, 2019, appellant filed his response to the state's motion in limine. In his response, appellant argued that the evidence the state sought to exclude was expressly permitted by Evid.R. 106, 404(B), 607, 608, 609, and 616, for the purpose of demonstrating that the state's witnesses were biased against appellant. In support, appellant cited testimony of a witness that agents working for the Bureau of Criminal Investigations ("BCI") brought the current charges against appellant as a vendetta for

5.

statements appellant made to a newspaper that were critical of the BCI. Because the evidence would be admitted for the proper purpose of showing witness bias, appellant argued that the evidence should not be excluded.

{¶ 11} On November 4, 2019, the trial court issued its decision on the state's motion in limine, in which it found in favor of the state without expressly addressing appellant's bias argument. Immediately thereafter, the matter proceeded to a two-day jury trial.

{¶ 12} At trial, the state called ten witnesses. First, the state called Diana Hoover, a licensed social worker in the field of child protection. As a former director of the Hancock County Job and Family Services, Hoover oversaw cases of child abuse in which law enforcement was involved. According to Hoover, the cooperation between entities including job and family services agencies and local law enforcement is guided by a memorandum of understanding governing the investigation of reports of alleged child abuse and neglect. A copy of the memorandum of understanding bearing appellant's signature was admitted into evidence as plaintiff's exhibit 10.

{¶ 13} Hoover testified that the memorandum of understanding to which appellant subscribed regulates disclosure of confidential information. In particular, Hoover stated that under the memorandum of understanding and Ohio law, reports of alleged abuse or neglect from mandatory reporters are confidential, as are the names of the reporters. As such, Hoover indicated that law enforcement officials are not permitted to release the reports to the general public in any manner, including publishing the reports on the

6.

internet or posting the reports onto the Facebook platform. However, Hoover acknowledged on cross-examination that subscribers to the Williams County memorandum of understanding are granted "professional discretion" to handle individual cases in a manner they deem appropriate.

{¶ 14} For its second witness, the state called Pam Hablawetz. As a licensed emergency room nurse at Community Memorial Hospital in Hicksville, Defiance County, Ohio, Hablawetz is a mandatory reporter of child abuse. While reporting is ordinarily directed to Child Protective Services, Hablawetz generally reports to local sheriff departments since she works from 7:00 p.m. until 7:00 a.m., when Child Protective Services is closed.

{¶ 15} On June 28, 2016, Hablawetz assumed responsibility for a case involving an infant, in which she suspected child abuse due to bruising and injuries that she observed on the baby's body. In response, Hablawetz reported the suspected abuse to appellant's office. Tragically, the infant died one month later.

{¶ 16} Next, the state called deputy Ben Baldwin of the Williams County Sheriff's Office for its third witness. Baldwin was the deputy who spoke with Hablawetz on June 28, 2016, when she reported her suspicion of child abuse. Baldwin testified that he did not suspect a crime had been committed based upon his discussion with Hablawetz, but he documented the conversation nonetheless. The police report Baldwin prepared after his discussion with Hablawetz, which makes several references to a "nurse Pam," was subsequently admitted into evidence as plaintiff's exhibit 1. During her testimony,

7.

Hablawetz indicated that she was the only nurse named Pam that worked at Community Memorial Hospital on June 28, 2016.

{¶ 17} After speaking with Hablawetz, Baldwin referred the matter to the on-call investigator at the Williams County Department of Job and Family Services. Job and Family Services subsequently sent Baldwin a letter referring to Baldwin by name and indicating receipt of his report. According to the letter, which was admitted into evidence as plaintiff's exhibit 2, the agency did not complete an assessment or investigate the matter further because it determined that the child's injuries were accidental.

{¶ 18} For its fourth witness, the state called deputy clerk Hayley Schmidt of the Williams County Sheriff's Office. In her role as deputy clerk, Schmidt maintains records and posts information on the office's website, which she identified as www.WilliamsCountysheriff.com. At appellant's request, Schmidt sent an email containing the Job and Family Services report to the website administrator, Dan Paul. According to Schmidt, appellant prepared the report, which he "had been working on for Job and Family Services and the city schools." Thereafter, appellant asked Schmidt to have the report posted on the Williams County Sheriff's Office website. After Schmidt forwarded the report to Paul, Paul posted the report on the website on October 18, 2018.

{¶ 19} On cross-examination, Schmidt acknowledged that appellant contacted her two days after the report was posted on the website and directed her to take the report off of the website so that it could be redacted.

8.

{¶ 20} As its fifth witness, the state called deputy clerk Lisa Nye of the Williams County Sheriff's Office.  In the months leading up to the posting of the report to the sheriff's office website, Nye was asked to make necessary redactions so that "[i]f it were to be made available for a public records request, that it would be okay to go out."  Nye testified that the report consisted of reports from Job and Family Services and medical records.  Nye took the report home with her from work, and made the appropriate redactions over the course of a "couple of evenings."  Nye described the process that she used to make the redactions as follows:

> I sat at my dining room table with a white line marker, it's like a dry erase marker, like white out, but it's a dry line, and I had binder clips and things of that nature, and I would go through and I would look for names of people who should not be put out into the public.  And then if it was a document that our office didn't create, I put a binding clip on it, and that was essentially what I did.

> * * *

> If it didn't come from our office, I would not have said that it could be released.

{¶ 21} Later in her testimony, Nye stated that she expressed concerns to appellant about releasing certain portions of the report to the public.  Because Nye and appellant did not agree on which documents could be lawfully disclosed, appellant informed Nye that he was going to have someone else review the report.  Nye went on to state that she

9.

informed appellant that "none of it can go * * * and I explained, I said well Job and Family, I said rule of thumb with public records requests if you don't create it you can't release it. And [appellant] did not – he felt like maybe that wasn't actually accurate, and so we left if at that."

{¶ 22} On cross-examination, Nye acknowledged that appellant was concerned about the redactions made to the report. As to appellant's concern, Nye indicated that appellant "wanted to make sure that if it went out, if anything * * * went out to the public [it] was done correctly."

{¶ 23} Following Nye's testimony, the state called sergeant Andy Collert of the Williams County Sheriff's Office as its sixth witness. Collert testified that he posted a letter regarding the Job and Family Services report to the Facebook page for the Williams County Sheriff's Office on the evening of October 19, 2018. Collert explained that he did so at appellant's request. Less than 24 hours after posting the letter, Collert received a phone call from appellant, who asked Collert to take the post off of the Facebook page because there were matters contained in the report that were not redacted properly.

{¶ 24} As its seventh witness, the state called Craig Meyers. At some point in October 2018, Meyers' wife, a social worker, alerted him to the posting of the Job and Family Services report, which contained the names of Meyers and his wife, as well as their address. Angered by the disclosure, Meyers called appellant to express his displeasure. According to Meyers, appellant "apologized and said [he] didn't know that was out there, and would get with his office to take care of it."

10.

{¶ 25} For its final three witnesses, the state called BCI agents David Pauly, Chris Hamberg, and Ryan Emahiser. Collectively, these agents were responsible for gathering evidence and interviewing witnesses, including appellant, as part of the investigation in this matter. Audio clips of two interviews, one conducted by Pauly and one conducted by Hamberg, were played at trial and admitted into evidence. In these clips, appellant acknowledged his role in publishing the Job and Family Services report to the Williams County Sheriff's Office website, and indicated that he directed Schmidt to have the report posted.

{¶ 26} At the conclusion of Emahiser's testimony, the state rested. Appellant then moved for an acquittal under Crim.R. 29. In support of the motion, defense counsel argued that the state failed to meet is burden to establish that appellant acted recklessly in disclosing the unredacted confidential information in the Job and Family Services report. In response, the state contended that its evidence establishing that appellant moved forward with posting the report to the website after being warned of the confidential information contained therein constituted recklessness sufficient to sustain convictions for the charged offense. Upon hearing the parties' arguments, the trial court denied the Crim.R. 29 motion, and the matter proceeded to appellant's case-in-chief.

{¶ 27} Appellant called himself to the stand as his lone witness. Appellant testified that the Williams County Commissioners asked him to prepare the Job and Family Services report sometime in 2017. Once he completed the report, he forwarded it to the commissioners and "had [his] staff put it on the web page" after he reviewed it.

11.

Prior to posting the report, appellant discussed the matter with another Ohio sheriff who was his mentor. After discussing the report with his mentor, appellant believed the report could be posted "so long as everything was [properly redacted]."

{¶ 28} The morning after the report was posted to the Williams County Sheriff's Office website, appellant learned that there was inappropriate material contained in the report. Upon learning of the inappropriate disclosure, appellant "tried to do whatever I could to remove it, because honestly, I don't know how to do that, so I called Clerk Schmidt, and we went and got a hold of Mr. Paul somehow, who was the website coordinator, and I requested to get it down as soon as possible."

{¶ 29} On cross-examination, appellant admitted that he released the Job and Family Services report despite Nye's concerns about the confidentiality of some of the unredacted material contained therein.

{¶ 30} Following appellant's testimony, the parties provided their closing arguments and the trial court instructed the jury. After deliberating, the jury found appellant guilty of disclosure by a public official. The trial court then moved immediately to sentencing, ultimately ordering appellant to serve 180 days in jail and pay a fine of $500. The court went on to suspend the jail sentence and place appellant on probation for a period of three years.

{¶ 31} Thereafter, appellant filed his timely notice of appeal.

12.

## B. Assignments of Error

{¶ 32} On appeal, appellant assigns the following errors for our review:

I. There is insufficient evidence to support appellant's conviction.

II. Appellant's conviction was against the manifest weight of the evidence.

III. The trial court erred when it denied appellant's motion to dismiss.

IV. The trial court erred when it granted the state's motion in limine.

V. The trial court erred when it did not order a mistrial when the prosecutor made statements in closing contrary to the court's liminal motion and contrary to the evidence presented at trial.

VI. Cumulative error has denied appellant a fair trial.

VII. Ineffective assistance of counsel has denied appellant a fair trial.

{¶ 33} For ease of discussion, we will address appellant's assignments of error out of order.

## II. Analysis

## A. Motion to Dismiss

{¶ 34} In appellant's third assignment of error, he argues that the trial court erred in denying his September 26, 2019 motion to dismiss the state's complaint.

13.

{¶ 35} We review a trial court's denial of a motion to dismiss de novo. *Whitehall v. Khoury*, 10th Dist. Franklin No. 07AP-711, 2008-Ohio-1376, ¶ 7, citing *Akron v. Molyneaux*, 144 Ohio App.3d 421, 426, 760 N.E.2d 461 (9th Dist.2001). "A motion to dismiss tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced at trial." *State v. Morrison*, 9th Dist. Summit No. 24965, 2010-Ohio-6309, ¶ 17, citing *State v. Patterson*, 63 Ohio App.3d 91, 95, 577 N.E.2d 1165 (2d Dist.1989). "If the indictment is valid on its face, a motion to dismiss should not be granted." *Id.*, citing *State v. Eppinger*, 162 Ohio App.3d 795, 2005-Ohio-4155, 835 N.E.2d 746, ¶ 37 (8th Dist.).

{¶ 36} In his motion to dismiss, and again on appeal before this court, appellant contends that R.C. 102.03(B) and 2151.421(I)(2)(a) are unconstitutional under the Ohio Constitution and the First Amendment to the United States Constitution, because they infringe upon his right to free speech and they constitute improper strict liability criminal offenses. Further, appellant asserted that R.C. 102.03(B) vests exclusive jurisdiction over these investigations in the Ohio Ethics Commission and that the state lacked jurisdiction without the matter being referred to it by the Ohio Ethics Commission. Additionally, appellant argued that he was the victim of the state's selective prosecution in this case. For clarity's sake, we will address each of appellant's arguments in turn.

### i. Free Speech

{¶ 37} We begin by addressing appellant's free speech argument. In his brief, appellant asserts that the prohibitions against disclosure of confidential information under

R.C. 102.03(B) and 2151.421 are unconstitutional as they infringe upon his right to partake in political speech. In response, the state argues that appellant has no absolute right to disseminate confidential information pertaining to child abuse or neglect, and contends that appellant's free speech argument "ignores the important privacy interests and legislative intent behind them."

{¶ 38} "The constitutionality of a statute or regulation is a question of law to be reviewed de novo." *State v. Whites Landing Fisheries, LLC*, 2017-Ohio-4021, 91 N.E.3d 315, ¶ 15 (6th Dist.), citing *Thorp v. Strigari*, 155 Ohio App.3d 245, 2003-Ohio-5954, 800 N.E.2d 392, ¶ 10 (1st Dist.). "When considering the constitutionality of a statute, [a reviewing court] 'presume[s] the constitutionality of the legislation, and the party challenging the validity of the statute bears the burden of establishing beyond a reasonable doubt that the statute is unconstitutional.'" *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, ¶ 12, quoting *Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, 981 N.E.2d 814, ¶ 18. Parties have a "heavy burden" when attempting to rebut the presumption of constitutionality. *Dayton* at ¶ 12, citing *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 10, 539 N.E.2d 103 (1989).

{¶ 39} Under Ohio Supreme Court precedent, it is a well-established notion that "the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution." *Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 626 N.E.2d 59 (1994), citing *State ex rel. Rear Door Bookstore v. Tenth Dist.*

15.

*Court of Appeals*, 63 Ohio St.3d 354, 362-363, 588 N.E.2d 116 (1992), *Zacchini v. Scripps–Howard Broadcasting Co.*, 54 Ohio St.2d 286, 288, 376 N.E.2d 582 (1978), and *State v. Kassay*, 126 Ohio St. 177, 187, 184 N.E. 521 (1932). Accordingly, we will look to relevant First Amendment jurisprudence in addressing appellant's free speech argument.

{¶ 40} In *Boehner v. McDermott*, 484 F.3d 573 (D.C.Cir.2007), the United States Court of Appeals for the D.C. Circuit addressed and rejected an argument related to the one raised by appellant in this case. In *Boehner*, a cell phone conversation between Representative John Boehner and several House Republican leaders was illegally obtained by Alice and John Martin. The Martins delivered the tape, along with a letter explaining the nature of its contents, to Representative James McDermott, the ranking Democrat on the House Ethics Committee. "After conversing with the Martins, [McDermott] accepted the envelope." *Id.* at 576. After listening to the tape, McDermott disclosed it to various newspapers, prompting Boehner to file a complaint against McDermott seeking damages for violations of federal and state wiretapping statutes.

{¶ 41} At the trial court level, the District Court held that McDermott violated the federal wiretapping statute, 18 U.S.C. 2511(1)(c), which makes intentional disclosure of illegally intercepted conversations a criminal offense, when he disclosed the tape to the newspapers. On appeal, the D.C. Circuit heard the case en banc to determine "whether Representative McDermott had a First Amendment right to disclose to the media this particular tape at this particular time given the circumstances of his receipt of the tape,

the ongoing proceedings before the Ethics Committee, and his position as a member of the Committee." *Id.* at 577.

{¶ 42} In its examination of the First Amendment question, the D.C. Circuit looked to the United States Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995), for guidance. In *Aguilar*, the Supreme Court held that the First Amendment did not give a federal judge, who obtained information about an investigative wiretap from another judge, the right to disclose that information to the subject of the wiretap. In so holding, the court noted that the judge was not

> simply a member of the general public who happened to lawfully acquire possession of information about the wiretap; he was a Federal District Court Judge who learned of a confidential wiretap application from the judge who had authorized the interception, and who wished to preserve the integrity of the court. Government officials in sensitive confidential positions may have special duties of non-disclosure.

*Id.* at 605-06.

{¶ 43} Relying upon *Aguilar*, the D.C. Circuit in *Boehner* rejected McDermott's First Amendment argument, finding that "McDermott's position on the Ethics Committee imposed a 'special' duty on him not to disclose the tape in these circumstances," and concluding that "those who accept positions of trust involving a duty not to disclose

information they lawfully acquire while performing their responsibilities have no First Amendment right to disclose that information." *Boehner* at 579.

{¶ 44} Four years after *Aguilar* was decided, the United States District Court for the District of Columbia issued its decision in *U.S. v. Kim*, 808 F.Supp.2d 44 (D.C.2011). *Kim* involved the prosecution of an intelligence official who was charged with unlawfully disclosing classified national defense information to a person not entitled to receive it. The defendant raised a First Amendment challenge to his prosecution under U.S.C. 793(d), which was rejected by the court after the court found that the defendant's security clearance imposed upon him a duty not to disclose the information and he "expressly waived in writing his right to disclose the national security information he obtained while in his government position." *Id.* at 57. The court went on to note that "[c]ourts have uniformly held that government employees who sign such nondisclosure agreements lack protection under the First Amendment." *Id.*, citing *McGehee v. Casey*, 718 F.2d 1137, 1143 (D.C.Cir.1983) (holding that CIA's enforcement of secrecy agreement signed by former employee does not violate the First Amendment) and *Berntsen v. CIA*, 618 F.Supp.2d 27, 29 (D.C.2009) ("[T]he CIA's enforcement of its secrecy agreement, and the corresponding prohibition on [defendant's] publication of classified information, do not implicate the first amendment.").

{¶ 45} Similar to the federal judge in *Aguilar*, the congressman in *Boehner*, and the intelligence official in *Kim*, appellant held a position of trust as the sheriff of Williams County, which made him privy to sensitive, confidential information that is not

18.

open to the public. Moreover, as was the case with the defendant in *Kim*, appellant executed a document (i.e., the memorandum of understanding) waiving his right to disclose the information he released in the Job and Family Services report. Under both the memorandum of understanding and the Ohio Revised Code, reports of alleged abuse or neglect from mandatory reporters, as well as the identities of the reporters, are confidential and may not be disclosed to the public. The disclosure of this information places the privacy and safety of children and mandatory reporters of child abuse and neglect in jeopardy. Under *Aguilar* and its progeny, the statutory provisions proscribing appellant's disclosure of the contents of the Job and Family Services report do not violate appellant's freedom of speech rights under the First Amendment to the United States Constitution or the coordinate rights contained in the Ohio Constitution.

### ii. Due Process

{¶ 46} Next, we turn to appellant's argument that R.C. 102.03(B) is unconstitutional because it imposes strict criminal liability in violation of his right to due process. We observe at the outset that appellant has included a dearth of explanation or citation to case law in his brief in support of this due process argument. Further, we note that the imposition of strict criminal liability does not constitute a per se infringement of a defendant's due process rights. *See U.S. v. Murphy*, 96 F.3d 846, 849 (6th Cir.1996), quoting *U.S. v. Goodell*, 990 F.2d 497, 499 (9th Cir.1993) ("We observe, moreover, the well-settled principle that '[a] statute may provide criminal liability without mens rea consistent with due process if it is a regulatory measure in the interest of public safety.'").

**{¶ 47}** With the foregoing in mind, we will proceed with an examination of the merits of appellant's argument regarding R.C. 102.03(B), which provides:

> (B) No present or former public official or employee shall disclose or use, without appropriate authorization, any information acquired by the public official or employee in the course of the public official's or employee's official duties that is confidential because of statutory provisions, or that has been clearly designated to the public official or employee as confidential when that confidential designation is warranted because of the status of the proceedings or the circumstances under which the information was received and preserving its confidentiality is necessary to the proper conduct of government business.

**{¶ 48}** We recognize that R.C. 102.03(B) does not expressly specify a mens rea. The question of whether a statute that is silent as to a mens rea imposes strict liability was addressed by the Ohio Supreme Court in *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 20-38. The court began by noting that "every criminal offense is made up of (1) a voluntary act or failure to act when there is a duty and (2) a culpable mental state for each element that specifies a mental state." *Id.* at ¶ 16, citing R.C. 2901.21(A). The court went on to recognize that "although the general rule for criminal liability requires a culpable mental state, a guilty intent is not necessary for every offense." *Id.* at ¶ 17, citing *State v. Morello*, 169 Ohio St. 213, 158 N.E.2d 525 (1959). Nonetheless, the court cautioned that "strict liability for an offense is the

20.

exception to the rule." *Id.* at ¶ 18. Relying upon a former version of R.C. 2901.21(B), the court held that strict liability is only applicable where the section defining the offense does not specify a mens rea *and also* plainly indicates a purpose to impose strict liability. *Id.* at ¶ 19. Where no such purpose is indicated, the default mens rea of recklessness applies. *Id.*; *see also* R.C. 2901.21(C)(1) ("When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly.").

{¶ 49} As already noted, the express language of R.C. 102.03(B) does not specify a mens rea for the offense of disclosure by a public official. Moreover, the statute does not indicate a purpose to impose strict liability. Therefore, under the Ohio Supreme Court's decision in *Johnson* and the plain language of R.C. 2901.21(C)(1), the default mens rea of recklessness applies and thus the state was required to demonstrate that appellant acted recklessly in releasing the confidential material contained in the Job and Family Services report in violation of R.C. 102.03(B). Significantly, recklessness was the mens rea applied by the parties and the court at trial. Indeed, one of appellant's primary arguments in defense of the state's charge under R.C. 102.03(B) was that his release of confidential information was inadvertent rather than reckless.

{¶ 50} Because the state was required to prove that appellant acted recklessly in order to sustain a conviction for disclosure by a public official under R.C. 1020.03(B), we

21.

find no merit to appellant's argument that R.C. 102.03(B) imposes strict liability and therefore infringes upon his constitutional right to due process.

### iii. Ohio Ethics Commission

{¶ 51} Next, we will address appellant's argument that the trial court erred when it failed to dismiss the state's complaint and allow this matter to be processed by the Ohio Ethics Commission following the procedure set forth in R.C. 102.06, which provides in pertinent part:

> (A) The appropriate ethics commission shall receive and may initiate complaints against persons subject to this chapter concerning conduct alleged to be in violation of this chapter or section 2921.42 or 2921.43 of the Revised Code. All complaints except those by the commission shall be by affidavit made on personal knowledge, subject to the penalties of perjury. Complaints by the commission shall be by affidavit, based upon reasonable cause to believe that a violation has occurred.
>
> * * *
>
> (C)(1)(a) If, upon the basis of the hearing, the appropriate ethics commission finds by a preponderance of the evidence that the facts alleged in the complaint are true and constitute a violation of section * * * 102.03 * * * of the Revised Code, it shall report its findings to the appropriate prosecuting authority for proceedings in prosecution of the violation and to the appointing or employing authority of the accused.

22.

**{¶ 52}** Appellant contends that the foregoing statutory language requires complaints alleging violations of R.C. 102.03 to originate exclusively with the Ohio Ethics Commission, not a county prosecutor. In support of his contention, appellant cites the Seventh District's decision in *In re Protest of Initiative Petitions Proposing Ohio Sales Tax Reduction Act*, 7th Dist. Harrison No. 04 HA 569, 2004-Ohio-4290, which involved a protest filed by Brian Rothenberg, who wished to challenge a petition proposing a statewide statutory initiative. After the Harrison County Prosecutor filed a petition to determine the sufficiency of certain initiative part-petitions, the Ohio Secretary of State moved to intervene. Ultimately, the trial court denied the Secretary's motion, and the Secretary appealed.

**{¶ 53}** On appeal, the Secretary argued, inter alia, that the trial court erred in denying his motion to intervene. In response, Rothenberg argued that the Secretary could not intervene because of "ethical considerations." *Id.* at ¶ 10. Specifically, Rothenberg argued that the Secretary's intervention would contravene R.C. 102.03(D) because of a conflict of interest.

**{¶ 54}** In rejecting Rothenberg's ethical argument, the Seventh District indicated that "[t]he proper way to raise an issue regarding whether a public official is acting ethically is by filing a complaint with the Ohio Ethics Commission. It is the body which 'shall receive and may initiate complaints against' public officials who violated their ethical duties." *Id.* at ¶ 12, quoting R.C. 102.06(A). The court went on to explain the process the Ohio Ethics Commission would follow under R.C. 102.06(B) and (C)(1)(a)

23.

upon receipt of a citizen complaint, including launching an investigation into the complaint and reporting any ethical violations to the prosecuting authority for further proceedings. *Id.* In the final analysis, the Seventh District stated:

> The statutes governing the ethical duties of Ohio's elected officials appear to give the Ethics Commission, not the courts, the authority to investigate violations of those ethical duties. Those statutes do not give the courts the ability to prevent those public officials from discharging their statutory duties because an opposing party argues that the discharge of those duties may result in an ethical violation.

*Id.* at ¶ 13.

{¶ 55} Having reviewed the Seventh District's decision in *In re Protest of Initiative Petitions Proposing Ohio Sales Tax Reduction Act*, we find it distinguishable from the present case in several material respects. First, the claim against the public official in that case was one alleging *unethical* conduct, not *criminal* conduct. Further, the complaint sought to preempt the public official from taking future action, not prosecute the official for action that he already took in violation of law. Given these differences, we find that *In re Protest of Initiative Petitions Proposing Ohio Sales Tax Reduction Act* is inapposite.

{¶ 56} Our review of the language of R.C. 102.06 reveals that R.C. 102.06(A) uses permissive language indicating that the "appropriate ethics commission shall receive and *may* initiate complaints against persons subject to this chapter concerning conduct

24.

alleged to be in violation of this chapter." (Emphasis added.) Further, R.C.

102.06(C)(1)(a) sets forth the procedure to be followed by the appropriate ethics

commission once it receives a complaint, investigates the facts set forth in the complaint,

and determines that the evidence establishes a violation of R.C. 102.03. Notably, the

statute does not speak to whether a county prosecutor may directly prosecute a public

official for alleged violations of R.C. 102.03, nor does it expressly require that the Ohio

Ethics Commission review a claimed violation of R.C. 102.03 prior to initiation of

criminal proceedings by the county prosecutor. To that point, we agree with the state's

sentiment that "[i]f the General Assembly had intended to confer exclusive jurisdiction

over all prosecutions pursuant to R.C. 102.03, they would have expressly said so."

{¶ 57} In sum, we find no merit to appellant's argument that the trial court erred

when it failed to dismiss the state's complaint for failure to follow the procedure set forth

in R.C. 102.06.

### iv. Selective Prosecution

{¶ 58} Finally, we turn to appellant's argument that the trial court erred in denying

his motion to dismiss because his is a victim of selective prosecution. Specifically,

appellant contends that "no other violation of R.C. 102.03(B) has been brought as a

criminal charge without first undergoing review of the Ethics Commission. Failing to

follow the standard protocol of first raising a complaint before the Commission

demonstrates that the Sheriff has been singled out for prosecution."

25.

**{¶ 59}** In *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, the Ohio Supreme Court set forth the following standard for adjudicating claims of selective prosecution:

The decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687. That discretion is, however, subject to constitutional equal-protection principles, which prohibit prosecutors from selectively prosecuting individuals based on "'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.*, quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Although a selective-prosecution claim is not a defense on the merits to the criminal charge itself, a defendant may raise it as an "independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *State v. Getsy*, 84 Ohio St.3d 180, 203, 702 N.E.2d 866 (1998); *see also Armstrong* at 463.

To support a claim of selective prosecution, "'a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e.,

based upon such impermissible considerations as race, religion, or the

desire to prevent his exercise of constitutional rights.'" *State v. Flynt*, 63

Ohio St.2d 132, 134, 407 N.E.2d 15 (1980), quoting *United States v.*

*Berrios*, 501 F.2d 1207, 1211 (C.A.2, 1974).

*Id.* at ¶ 43-44.

{¶ 60} Upon our review of the record in this case, we find that appellant has presented no evidence to establish a prima facie case of selective prosecution. As to the first element, appellant has not pointed to any cases in which a public official, sheriff or otherwise, escaped prosecution after disclosing confidential information concerning child abuse or neglect. Regarding the second element, appellant does not argue that he is a member of a protected class by virtue of his race, religion, or the like. Moreover, appellant does not demonstrate that the state's decision to prosecute him was the product of a desire to prevent him from exercising his constitutional rights, apart from his claimed constitutional right to disclose the information contained in the Job and Family Services report, which we already rejected. With a prima facie case of selective prosecution lacking in this case, we find no merit to appellant's argument that the trial court should have found that he was a victim of selective prosecution and dismissed the state's complaint.

{¶ 61} Having found no merit to appellant's arguments in support of his motion to dismiss the state's complaint, we conclude that the trial court did not err in denying the motion. Accordingly, we find appellant's third assignment of error not well-taken.

27.

## B. Motion in Limine

{¶ 62} In appellant's fourth assignment of error, he argues that the trial court erred when it granted the state's motion in limine, which sought to preclude appellant from introducing evidence concerning various agencies' handling of complaints or reported crimes of child abuse or neglect in Williams County.

{¶ 63} We review a trial court's decision on admissibility of evidence, including decisions granting or denying motions in limine, for an abuse of discretion. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. Abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 64} Under well-established Ohio law, "motions in limine do not preserve issues for appeal because they are tentative, preliminary rulings about an anticipated evidentiary issue and are subject to change during trial when the issue is presented in its full context." *Bohl v. Aluminum Co. of Am., Inc.*, 8th Dist. Cuyahoga No. 108584, 2020-Ohio-2824, ¶ 39, citing *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986), and *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 59. To that point, the Ohio Supreme Court in *State v. Hill*, 75 Ohio St.3d 195, 661 N.E.2d 1068 (1996), explained that "the denial of a motion in limine does not preserve a claimed error for review in the absence of a contemporaneous objection at trial." *Id.* at 203, citing *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988), paragraph three of the syllabus.

28.

{¶ 65} In this case, appellant did not offer the evidence precluded by the trial court's liminal ruling at trial. Therefore, he has forfeited his argument challenging the trial court's decision on the state's motion in limine, and we find his fourth assignment of error not well-taken.

### C. Sufficiency and Manifest Weight of the Evidence

{¶ 66} In his first and second assignments of error, respectively, appellant argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 67} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 68} When reviewing a manifest weight claim, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

29.

{¶ 69} Here, appellant was convicted of disclosure by a public official in violation of R.C. 102.03(B), which, as we noted above, provides:

> (B) No present or former public official or employee shall disclose or use, without appropriate authorization, any information acquired by the public official or employee in the course of the public official's or employee's official duties that is confidential because of statutory provisions, or that has been clearly designated to the public official or employee as confidential when that confidential designation is warranted because of the status of the proceedings or the circumstances under which the information was received and preserving its confidentiality is necessary to the proper conduct of government business.

{¶ 70} At trial, appellant stipulated that he was a public official at the time of the events giving rise to the charges in this case. Further, appellant did not contest that he disclosed information acquired in the course of his official duties. Instead, appellant disputed, both at trial and here on appeal, whether the information contained in the Job and Family Services report was confidential and whether the evidence presented by the state established that he acted recklessly in disclosing it.

{¶ 71} The confidentiality of the Job and Family Services report disseminated by appellant was clearly established at trial. During its case-in-chief, the state introduced the memorandum of understanding that prohibits signatories like appellant from releasing information concerning reports of child abuse and neglect. Hoover testified that such

30.

reports, including the Job and Family Services report, contain confidential information including the names of mandatory reporters of child abuse and neglect, which may not be disclosed under the memorandum of understanding and Ohio law. In his testimony, Meyers made it clear that the Job and Family Services report released by appellant contained referenced his address and identified his wife, a social worker, by name.

{¶ 72} In addition to the proscription against dissemination of information about child abuse and neglect found in the memorandum of understanding, Ohio law also precludes disclosure of such information. Indeed, R.C. 2151.421(I)[1] provides the following concerning disclosure of reports such as the Job and Family Services report:

> (I)(1) Except as provided in divisions (I)(4) and (O) of this section, a report made under this section is confidential. The information provided in a report made pursuant to this section and the name of the person who made the report shall not be released for use, and shall not be used, as evidence in any civil action or proceeding brought against the person who made the report. * * *
>
> (2)(a) Except as provided in division (I)(2)(b) of this section, no person shall permit or encourage the unauthorized dissemination of the contents of any report made under this section.

---

[1] Appellant asserts that R.C. 2151.421(I) is unconstitutional as a prior restraint on his freedom of speech. Having already rejected appellant's free speech arguments, we find no merit to appellant's argument here, and we therefore find that R.C. 2151.421(I) is binding upon appellant.

31.

{¶ 73} The evidence introduced by the state at trial establishes that the Job and Family Services report contained information regarding reports of child abuse and neglect, including the name of at least one reporter. This information was plainly confidential under R.C. 2151.421(I). Under R.C. 102.03(B), appellant was prohibited from releasing information that is "confidential because of statutory provisions," which would include R.C. 2151.421(I).

{¶ 74} Further, appellant was prohibited from disclosing this information by the memorandum of understanding, which clearly designates the information as confidential, a status that is both warranted because of the sensitive nature of these proceedings and necessary in order to ensure the safety of those involved in such proceedings, including the mandatory reporters of child abuse and neglect who are conducting government business. R.C. 102.03(B).

{¶ 75} Appellant attempts to avoid this conclusion by noting that he disclosed the Job and Family Services report to the Williams County Commissioners prior to releasing it to the public, thereby rendering the report a public record and vitiating its confidential status. Restated, appellant argues that because he disclosed the report to the Williams County Commissioners, he was therefore entitled to disclose the report to the public. We reject this argument.

{¶ 76} The information released by appellant was confidential under the express terms of both the memorandum of understanding and R.C. 2151.421(I). Appellant cannot avoid that characterization and unilaterally render the information public simply by

32.

providing it to another elected body. To hold otherwise would render advisory the proscription against disclosure of reports containing sensitive information concerning child abuse and neglect. Appellant's logic would permit public officials to disregard Ohio law and disseminate this information at their discretion, in direct contravention of R.C. 2151.421(I) and, in this case, the memorandum of understanding executed by appellant.

{¶ 77} Appellant also argues that the information contained in the Job and Family Services report was published in local newspapers prior to its release, and was thus not confidential. However, BCI agent Emahiser testified that he was unaware of any public records available in the news or on the internet that identified "Nurse Pam from Hicksville Hospital" by name, as did the Job and Family Service report. Appellant does not point to any evidence to the contrary. Because there is no evidence that the news reports referenced by appellant revealed the same confidential information contained in the Job and Family Services report, appellant's argument concerning news reports is unfounded.

{¶ 78} Here, a prosecution for violation of R.C. 102.03(B) requires the state to establish that the information disclosed by appellant was confidential under *either* R.C. 2151.421(I) or the memorandum of understanding. The evidence put forth by the state establishes that the evidence was confidential under both the statute and the memorandum. Therefore, we reject appellant's argument that the state's evidence was

33.

insufficient to establish that the material disclosed in the Job and Family Services report was confidential.

{¶ 79} Next, appellant argues that the state failed to provide sufficient evidence to establish that he recklessly released the confidential information contained in the Job and Family Services report.

{¶ 80} Under R.C. 2901.22(C),

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 81} Appellant argues that he did not act recklessly in this case because he "thought names and other sensitive information should be redacted," and took action to remove the Job and Family Service report from public view once he realized that unredacted confidential information was contained therein. Appellant contends that his efforts to redact the confidential information, which included directing Nye to make the necessary redactions and consulting with his mentor about the release of the Job and Family Services report, refute the notion that he acted recklessly in this case.

{¶ 82} In response, the state argues that appellant's attempt to make necessary redactions does not overshadow the reality that the posting of a report consisting of

34.

several hundred pages of potentially confidential information posed a significant risk of unlawful disclosure of confidential information. According to the state, appellant's persistence in releasing the report constituted a heedless indifference to this risk, and amounted to recklessness on appellant's part.

{¶ 83} Having thoroughly reviewed the record in its entirety, we make two observations relevant to appellant's recklessness argument. First, it is clear from the evidence that appellant made some attempt to redact the confidential information from the Job and Family Services report, and acted promptly to remove the report from the internet once he was contacted by Meyers and informed that the report contained confidential information. Second, Nye's testimony establishes that appellant was aware of concerns regarding the existence of confidential, nondisclosable information in the report following his redaction efforts and prior to its release. Nye informed appellant that the material could not be released, but appellant disagreed and decided to post it to the internet anyway.

{¶ 84} The first observation above indicates that it was not appellant's *intent* to release confidential information to the public. However, the state was required to establish recklessness, not intent, and the second observation reveals that appellant's effort to redact the confidential material was secondary to his desire to publicize what he perceived to be shortcomings at Job and Family Services.

{¶ 85} Appellant's decision to publish the Job and Family Services report ignored Nye's "rule of thumb" that appellant's office could not release and therefore should not

35.

release records that were created by another agency. It is clear that appellant made a calculated decision to publish a report containing sensitive, confidential information despite language prohibiting such publication contained in the Ohio Revised Code and the memorandum of understanding to which he assented as sheriff, and despite Nye's practical advice cautioning against publication of the report.

{¶ 86} When viewing the evidence in a light most favorable to the prosecution, as we must do in a sufficiency analysis, we find that a rational trier of fact could find that appellant's decision to release the report despite concerns made known to him regarding the sensitive nature of the information contained therein constituted a heedless indifference to the consequences of releasing the report and a disregard of the substantial and unjustifiable risk that the report contained confidential information that was nondisclosable, thereby establishing recklessness. Accordingly, we reject appellant's sufficiency argument as to the recklessness element.

{¶ 87} Next, we turn to appellant's manifest argument set forth in his second assignment of error. In his brief, appellant asserts that he "does not present this Court with additional areas of emphasis from those discussed in the [sufficiency] assignment of error." As to these areas of emphasis, namely whether the state established the confidential nature of the information contained in the Job and Family Services report and appellant's recklessness, we have reviewed the record, weighed the evidence and all reasonable inferences to be drawn from that evidence, and considered the credibility of witnesses. Having done so, we do not find that the jury clearly lost its way in resolving

36.

conflicts in the evidence, nor do we conclude that the jury created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. While the evidence presented in this case on the issue of recklessness was perhaps susceptible to a different conclusion than that reached by the jury, we cannot say that this is the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, *supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Therefore, appellant's conviction is not against the manifest weight of the evidence.

{¶ 88} Because we conclude that appellant's sufficiency and manifest weight arguments have no merit, we find appellant's first and second assignments of error not well-taken.

### D. Mistrial

{¶ 89} In appellant's fifth assignment of error, he argues that the trial court erred when it failed to declare a mistrial based upon prosecutorial misconduct during the state's closing arguments. Appellant did not object to the state's remarks at trial, nor did he move the trial court to declare a mistrial. Consequently, the question here is whether the trial court erred in failing to declare a mistrial sua sponte.

{¶ 90} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Davis*, 6th Dist. Ottawa No. OT-09-032, 2010-Ohio-4383, ¶ 71, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127-128, 580 N.E.2d 1 (1991). "The failure to grant a mistrial sua sponte is judged under a plain error standard." *Id.*

37.

{¶ 91} In order to establish plain error, there must be an error, or "a deviation from a legal rule," the error must be plain, that is, it must be "an 'obvious' defect in the trial proceedings," and the error must have affected "substantial rights" by altering the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Notice of plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 92} Appellant argues that the state committed prosecutorial misconduct when it made the following statement during closing arguments:

> The judge will give you the definitions of reckless, I'm not going to read it again, but it essentially means acting with headless indifference to the consequences. I know confidential records could get out there. My great staff or my trusted staffer told me, but I command you to get it up, let's go, I have an agenda, *I got a very important agenda, and by the way, it's not about child abuse, it's about calling out people in those reports. That was very clear.* It's reckless to put up information that you know may [contain] confidential information in there. (Emphasis added.)

{¶ 93} "Generally, prosecutors are entitled to considerable latitude in opening and closing arguments." *State v. Boles*, 6th Dist. Lucas No. L-07-1255, 2009-Ohio-512, ¶ 47, citing *State v. Ballew*, 76 Ohio St.3d 244, 667 N.E.2d 369 (1996). During closing, a

38.

prosecutor may comment on what the evidence has shown and what reasonable inferences may be drawn from the evidence. *Id*.

{¶ 94} According to appellant, the highlighted portion of the foregoing statement impermissibly touched upon the subject appellant was precluded from addressing at trial due to the trial court's decision granting the state's motion in limine. Specifically, appellant contends that "the prosecutor explicitly argued what the evidence had not shown, and what the defendant could not have possibly rebutted due to the court's liminal motion – the Appellant's actions were not about child abuse, but instead about calling out people in those reports."

{¶ 95} Appellant was prosecuted for disclosing confidential information contained in the Job and Family Services report. The prosecutor's statement at issue here was based upon reasonable inferences drawn from the evidence introduced at trial regarding appellant's reasons for releasing the Job and Family Services report. Because the prosecutor is permitted to comment on the evidence and the inferences drawn therefrom, it is clear that the challenged statement was not improper and did not constitute prosecutorial misconduct. Therefore, the trial court did not commit plain error in failing to declare a mistrial based upon the prosecutor's statement.

{¶ 96} Accordingly, appellant's fifth assignment of error is not well-taken.

### E. Ineffective Assistance of Counsel

{¶ 97} In his seventh assignment of error, appellant advances a conditional argument, as follows: "If while evaluating any of the prior argued assignments of error

39.

this court concludes that but for want of an objection or further argument Appellant would have prevailed, but alas, there was no such objection or further argument, then Appellant was denied his constitutional right to effective assistance of counsel."

{¶ 98} The outcome of appellant's previous assignments of error did not hinge upon trial counsel's failure to object or advance an argument at trial. The condition implied in appellant's argument has not been met, and his seventh assignment of error is therefore not well-taken.

### F. Cumulative Error

{¶ 99} In his sixth assignment of error, appellant argues that cumulative error has deprived him of a fair trial.

{¶ 100} Regarding the doctrine of cumulative error, the Supreme Court of Ohio has held that a conviction may be reversed where the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though each single instance of error does not individually constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶ 101} Having found no errors in the trial below, it follows that "there can be no cumulative error." *State v. Frost*, 6th Dist. Lucas No. L-06-1143, 2007-Ohio-3469, ¶ 60. Accordingly, appellant's sixth assignment of error is not well-taken.

### III. Conclusion

{¶ 102} In light of the foregoing, the judgment of the Bryan Municipal Court is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

JUDGE

Christine E. Mayle, J.

_____

Gene A. Zmuda, P.J. JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.